## Case No. 786.

### BAKER v. WHITING et al.

[1 Story, 218.][1]

Circuit Court, D. Maine. May Term, 1840.

EQUITY—NEWLY DISCOVERED EVIDENCE—MISTAKE OF COUNSEL—LACHES.

1. Where a rehearing is sought on the ground of newly discovered evidence, after an interlocutory decree, the court will grant such a rehearing upon the filing of a supplemental bill, if the evidence is of such a nature as to entitle the party to relief upon a bill of review, or a supplemental bill in the nature of a bill of review, after a final decree, but not otherwise.

[Cited in Jenkins v. Eldredge, Case No. 7,267; Doggett v. Emerson, Id. 3,961, Id. 3,962; Bentley v. Phelps, Id. 1,332; Reeves v. Keystone Bridge Co., Id. 11,661; Gillette v. Bate Refrigerating Co., 12 Fed. 109.]

2. Error of judgment, or mistake of law by counsel, as to the pertinency or force of evidence, furnishes no ground for a rehearing.

[Cited in Doggett v. Emerson, Case No. 3,961; Page v. Holmes Burglar Alarm Tel. Co., 2 Fed. 333.]

3. Where the party, seeking relief, had knowledge of the evidence before the decree, or might by a reasonable diligence or inquiry have obtained it, he is not entitled to relief.

[Cited in Bentley v. Phelps, Case No. 1,332; India Rubber Co. v. Phelps, Id. 7,025; Page v. Holmes Burglar Alarm Tel. Co., 2 Fed. 333; Colgate v. W. U. Tel. Co., 19 Fed. 829; Spill v. Celluloid Manuf'g Co., 22 Fed. 96.]

[See Massie v. Graham, Case No. 9,263; Purcell v. Miner, 4 Wall. (71 U. S.) 519.]

4. The general rule in cases of this sort is, not to allow a rehearing and a supplemental bill, where the newly discovered evidence is merely cumulative upon the litigated facts already in issue.

[Cited in Doggett v. Emerson, Case No. 3,961; Blandy v. Griffith, Id. 1,530; Bentley v. Phelps, Id. 1,332.]

5. Under the circumstances of this case, the petition for a rehearing was not granted.

[6. Cited in Bentley v. Phelps, Case No. 1,332, to the point that in chancery, where an averment is deemed requisite, and by its omission an error in pleading has occurred, which is not pointed out or objected to at the trial, the defect is usually regarded as waived or cured.]

[7. Cited in Brooks v. Moorhouse, Case No. 1,956, to the point that a court of equity will not ordinarily entertain jurisdiction of a matter which the person has had an opportunity of litigating in another court, and which had there been decided against him, unless it appears that circumstances beyond his control prevented his making the defense or trying the question.]

In equity. Petition by [Timothy] Whiting for a rehearing, and for leave to introduce new evidence in this cause, which was formerly before this court, and is reported in 3 Sumn. 476, [Baker v. Whiting, Case No. 787.] [Denied.] The petition, in substance,

[1] [Reported by William W. Story, Esq.]

stated as follows: That the petitioner denies, expressly, that he ever was constituted agent of Tidd & Stimpson, or either of them, or their heirs. And that he never understood, that it was important to ascertain, whether they ever had any particular and properly constituted agent, and if so, who was such agent. Nor was he ever advised, that it was necessary to make the same appear in point of law; but, on the contrary, he was advised by his counsel in the cause originally, that it was a matter of no consequence; and he never received any other or different advice; and, for the circumstances relating thereto, he prays leave to refer to his affidavit.

That the petitioner did well understand, that John Cooper, Esq. had been the agent of Peck, the former proprietor of township No. 12; but that he did not know, that the said Cooper was the agent especially for the said Tidd & Stimpson, though he believes, that he was so told by the said Baker, before the bringing of the suit in equity, as he has stated in his affidavit. Yet, if he should be deemed to have had cause for inquiring into the truth thereof, he prays relief, on account of his utter ignorance, and of the advice he had received in regard to its being of no material importance.

That if this declaration did not refer to the time, for which the plaintiffs undertook to charge and treat the said Cooper as owner, but to a former period, then the petitioner submits, that there was no occasion for inquiry. And if the declaration was true, and known by the said Baker to refer to the period set forth in the bill, it was fraudulent in the said Baker and his wife to proceed against him, on the ground of his being such agent, the said Baker well knowing the contrary.

That since the decretal order of the court the petitioner has made most earnest inquiry, and discovered, that the said Cooper was the actual agent of the said Tidd & Stimpson, and of the heirs of Tidd, after his decease; and that the said Stimpson and the heirs of said Tidd did refuse to redeem the land from the said sale for taxes.

That the petitioner had no knowledge or notice of the intention of the plaintiffs to introduce in evidence the paper, purporting to be a license to erect a mill, made by him to Aaron L. Raymond and Paul Howe; and that it was not charged in the bill, nor annexed to the interrogatories, nor to the commission, and that no interrogation was framed by the plaintiffs pointing to it; and that if notice had been given to him in regard to the introduction of this paper, it would have led him to show the general agency of the said Cooper for the proprietors, and consequently, the particular agency of the said Cooper for Tidd & Stimpson, and the heirs of Tidd; and thence to the fact, stated by him, of their refusal to redeem the

land, all of which circumstances lay in the same train.

The petitioner prays for a rehearing of the said cause, so that the same may be opened upon the point of agency, both at law and in fact, to afford him an opportunity to exhibit the truth in relation to such fact of agency; and to avoid extreme injustice being done in charging him, as agent of Tidd and his heirs, and Stimpson, when they, in fact, had another agent, and he was not their agent, and received no money from them for the payment of said taxes; but that they absolutely refused to pay them, or to redeem the said lands.

And if the prayer of the petitioner is opposed and pressed with the objection, that such circumstances might have been known and ascertained by him by diligent inquiry, and by advice and counsel, he then says, that they were all misled and deceived by the form of the false statements in the bill; and that the plaintiffs well knew the contrary, and must have suppressed the knowledge thereof from their own counsel, and therefore have obtained their decree by fraud, and are not, therefore, entitled to retain the benefit thereof.

That if the relief may not be obtained in the regular manner of a rehearing, the petitioner prays, that it may be granted by leave to proceed in some other and further manner, in the nature of review, and that all proceedings may be stayed in the meantime, and permission granted to perpetuate the testimony of John Cooper.

The affidavit of Whiting in support thereof, was as follows:

"I, Timothy Whiting, age seventy-two years, on oath declare and say, that since the hearing and opinion given by the court in the case of George Baker and wife, plaintiffs in equity against me, in the circuit court of the United States, for Maine district, at the present term, certain facts have come to my knowledge, which I am advised, and believe to be of great importance to me, and which, if they had been ascertained and exhibited in season, I have reason to believe would have been of a decisive character in my defence.

"I would refer, in the first place, to the affidavit of John Cooper, Esq., now on the files of the court, as containing two distinct facts; that for some years before, and also after August, 1821, he was the agent of several of the proprietors of said township No. 12, and among them of Jacob Tidd and Samuel Stimpson, and afterwards, on behalf of the heirs of said Tidd, and had the care of the lands in which they were concerned: secondly, that after the land was sold in August, 1821, for taxes, and purchased by me, the said Stimpson and the heirs of said Tidd refused to redeem the land stated by said Cooper.

"I further declare and say, as aforesaid,

that I had no knowledge of the above refusal to redeem the land, as stated by said Cooper, until it was first made known to me by him, at the time of making said affidavit. And I further declare, that I did not know, that the said Cooper was the agent in special of said Tidd & Stimpson, and of the heirs of said Tidd, as he has stated in said affidavit for the lands in said township No. 12.

"I further state, that true it is, sometime in the year 1835, said Baker did call on me in Boston, and make inquiries concerning lands which said Tidd, or Tidd & Stimpson formerly owned in the vicinity, where I lived, and in which the heirs of said Tidd were interested, lying in what are now the towns of Marion and Cutler, adjacent to said Whiting, and also in said No. 12, now Whiting; and that, in his conversation, the said Baker spoke of General Cooper as having been formerly agent for certain proprietors in those townships generally, and among them, I believe, he mentioned the said Tidd & Stimpson. Such is the impression on my mind. Said Baker then understood, that I was in possession of the land, which he supposed to have belonged to Tidd & Stimpson, in Whiting, claiming title, and he stated, that he had ascertained the circumstances respecting the sale and purchase by me for the taxes. Nothing was said or intimated to me by said Baker respecting any agency of mine at any time on behalf of said Tidd & Stimpson, or either of them, in regard to said lands in Whiting sold for taxes. I state the foregoing conversation according to the best of my recollection and belief. .

"I should not seek to introduce the mention of the above circumstance in this statement, except so far as it may be proper to qualify, or affect, what I have said respecting my not having knowledge, that said Cooper was ever agent of said Tidd & Stimpson. In that conversation said Baker made principal inquiry about the land in Cutler, which he proposed to sell to me. He did not, to my recollection, at that time, set up any claim to the land in Whiting.

"I further declare, and say, that I understood the said Cooper was formerly the agent of John Peck, who once owned the township, excepting settlers' lots, to take care of the lands belonging to said Peck; and that those, to whom Peck sold, generally employed said Cooper to see to their lands. He was so requested and employed by myself, as well as others, before I moved• into the State of Maine.

"I . further state, that my acquaintance with the business and concerns of what is now the town of Whiting commenced about the year 1816 or 1817. I then understood, that said Cooper was the agent of a considerable number of the proprietors of said township, and I supposed the major part of them. General Cooper gave numerous permits on behalf of those proprietors for whom he acted, without objection from me, and he knew and made no objection to those, which I granted, which was done with his consent. Neither of us intended, as I believe, to exceed our respective rights, or those, for which we acted, or to exercise them in such a manner as to interfere with each other. I acted with his advice and consent, on the part of those, for whom he acted as agent, in giving permission to Raymond and Howe to erect a saw-mill at the Orange Rips. I had no notice of the intention to introduce in testimony the paper made by me to said Raymond and Howe, which I could have explained by General Cooper and other testimony.

"General Cooper formerly lived in Machias; but shortly after the separation of this state from Massachusetts, he removed with his family into the town of Cooper, about twenty miles distant. Since which he has lived very retired, and I have rarely seen him, not more than three or four times, to my recollection, until the 13th of May last, and I have had little intercourse or conversation with him since his removal, on the subject of said lands. General Cooper is father-in-law to Rufus K. Porter, Esq., who took the depositions, in which some of the deponents mention said Cooper having been agent to sundry persons; but no mention is made of Tidd & Stimpson.

"I would further state, that when the proprietors' lands were sold for taxes in Whiting, I had no wish to prevent any proprietors from redeeming by paying their proportions. On the contrary, I desired, that they should; and Messrs. Odiorne, Parkman, and Winthrop redeemed their parts. And two persons living in Boston, partners in business, viz. Messrs. Kilham & Mears, were willingly permitted by me to redeem, through General Cooper, after their lands were forfeited. I was the largest owner of said township.

"I further declare and say, that when I engaged the Hon. Prentiss Mellen as my counsel in this cause, and advised with him on the subject of the bill, and when he was drawing the answer, I endeavoured, to the best of my power, to communicate to him a general statement of all the circumstances, material to the case, and relating to my defence, so far as I comprehended the grounds and occasion, and as fully as I recollected the facts, and had the opportunity afforded me in the course of my consultation with him, in order to give him as full a view as I was able of the case on my part. And I do well recollect, that I then stated to Judge Mellen, that General Cooper had formerly acted as general agent for non-resident proprietors. I communicated to Judge Mellen, in substance, my conversation with Baker, and showed him a letter from Baker to me, which I afterwards forwarded to Judge Mellen, at his request. Judge Mellen said it was of no con-

sequence, who was the agent of any non-resident proprietors, except me; that the question was, whether I was the agent of Tidd & Stimpson, and he treated it as a matter of no importance, who else might have had any agency, and appeared averse to considering any such suggestion. I distinctly and perfectly remember, that I did endeavour to present that subject to his attention, and call his mind to that point; and I well remember the impression, which he appeared strongly to have, and which he left upon my mind, that it was a matter of no moment.

"I further declare, and say, that I did make to him the most direct and explicit denial of all agency on my part for the plaintiffs, and said Tidd & Stimpson, or the heirs of said Tidd; or that any money had been intrusted to me by them, to pay the taxes as set forth in the bill; and my defence was accordingly placed upon that denial, and the denial of all fraud, and upon my legal title. And relying on the sufficiency of this, with the advice I received, I did not suppose it to be important to ascertain, whether said Tidd & Stimpson, or the heirs of said Tidd, had employed any particular agent; and I was totally unadvised and ignorant in my own mind, of any use of ascertaining the extent of General Cooper's agency, under the impression, thus received from my counsel, that it was in nowise material to my defence. I was informed and understood, that the burthen of proof, in that respect, was upon the plaintiffs; and that the fact, that I was the agent, in opposition to the denial in my answer, was required to be established by conclusive testimony, equal to that of two witnesses; and that it was not incumbent to show, who was their agent, if I was not.

"And I again solemnly declare, that I was not the agent of said Tidd & Stimpson, or the heirs of said Tidd, or of any of them, by any appointment or authority from them, or either of them, directly or indirectly; and that I never intended, by any act or conduct of mine, to assume that character; although, in legal construction, in the view of the court, upon the evidence exhibited, I have been decided to have been such.

"In consequence of the state of evidence laid before the court, and remarks, which fell from the court, and upon suggestion to me of the other of my counsel, and also from them and by their advice, on my return from court, (which I left before the opinion was pronounced,) I immediately made a journey to the town of Cooper, and there ascertained the facts, stated by said Cooper in his affidavit, which I immediately enclosed to my counsel in Portland, requesting and urging them to take the proper measures for my relief, and obtain opportunity, if possible, for a further investigation of facts.

"I further say, that I was not informed of the testimony of the witnesses, until after my arrival in Portland to attend the trial of the case, except in a general manner, and that I was greatly surprised by the extent and amount of evidence at the hearing, beyond what I had an idea of, and in many respects and particulars different from my expectations.

"For the same reason as before stated, I have also procured the affidavits, which are now offered, of Enoch Hill, Isaac Crane, John Allen, and Eleazer Chase. I did not know, that these persons were acquainted with the facts they have stated, before their affidavits were taken, most of them having taken place sometime before I became acquainted with the country; they being advanced in life, living distant from each other, and two of them about thirteen miles from me, with whom I have had no connexion in business for ten or fifteen years past, and scarcely remember to have seen them.

"I beg leave finally to state, in words entirely of my own, if I may with propriety do so, that most of the lands, that I did own in that township, I conveyed to James Richardson, Esq., of Dedham, Massachusetts, some years since, in payment of a just demand against me; and having sustained a fair character through life thus far for integrity, which I believe the plaintiffs will not attempt to deny, it is extremely painful for me in my old age to be cast out from the society of the virtuous, by the sentence of judges of my native state. Timothy Whiting."

The deposition of John Cooper was as follows:

"I, John Cooper, of Cooper, in the county of Washington, and state of Maine, depose and say, that I was the agent of John Peck, the owner of township No. 12, now Whiting, from January 28, 1806, until the same was sold by him at different times to sundry persons. That I afterwards acted as the agent of Thomas L. Winthrop, Samuel Parkman, George and Thomas Odiorne, and Messrs. Jacob Tidd and Samuel Stimpson, all of whom purchased of said Peck; and that the non-resident proprietors' lands in said town were sold for taxes, in August, 1821. The deponent further saith, the above named Winthrop, Parkman, George and Thomas Odiorne redeemed their lands in said town, and had the same set off to them in severalty; and that the said Samuel Stimpson and the heirs of said Jacob Tidd, who deceased before said sale, refused to redeem their part, both before and after the time of redemption was out, giving as a reason, that the taxes were so high, they did not think it worth redeeming.

"The deponent further saith, that Major Timothy Whiting, who was the largest owner in said town, at no time acted as the agent of said Jacob Tidd and Samuel Stimpson, or of the heirs of the said Jacob Tidd deceased, according to the best of my knowledge and belief. Further deponent saith not. John Cooper."

There were other affidavits introduced by the petitioner, and also two receipts offered

by the original plaintiffs. It is unnecessary to recite them at large, as they are sufficiently referred to in the opinion of the court.

The questions upon the petition were argued by C. S. Daveis and P. Mellen, for the petition, and by Hobbs & Fessenden, against it.

The arguments for the petition were substantially as follows:

1st. That new facts, or facts discovered after a decree, or after publication passed in the cause, and which are materially pressing upon the decree, afford sufficient grounds to entitle the plaintiff to a rehearing. Young v. Keighly, 16 Ves. 350; Perry v. Phelips, 17 Ves. 178; Cook v. Bamfield, 3 Swanst. 607; Norris v. Le Neve, 3 Atk. 34; Ord v. Noel, 6 Madd. 127.

2d. That the new matter, upon which such a proceeding becomes proper and necessary, must have come materially and substantially to the knowledge of the party or his agents, after the decree, or at least after the time, when it would have been advantageously introduced in the cause. Ord v. Noel, 6 Madd. 127; Willan v. Willan, 16 Ves. 87; Earl of Portsmouth v. Lord Effingham, 1 Ves. Sr. 434; Norris v. Le Neve, 3 Atk. 34; Goodwin v. Goodwin, Id. 370; Dormer v. Fortescue, Id. 124; Jones v. Jones, Id. 110; Barrington v. O'Brien, 1 Ball & B. 173.

3d. That it must also appear, that a reasonable diligence was used to acquire a knowledge of the facts proved by the new evidence, before the decree. Young v. Keighly, 16 Ves. 349; Standish v. Radley, 2 Atk. 177; Gould v. Tancre, Id. 533.

Such being the principles laid down by the authorities, it was contended, that, under the circumstances of the present case, Whiting was entitled to relief. The point in issue was, originally, the agency of Whiting; and the agency of Cooper was only a matter of evidence, bearing collaterally on the main question, and might easily be supposed to have no material relevancy to the case. The fact of the agency of Cooper was, besides, expressly denied under oath by the defendant in his answer. It was communicated to counsel during the preparation of the case, and was by them considered as irrelevant, inasmuch as the question was not, who was the agent of Tidd & Stimpson, but only whether Whiting himself was their agent. Whiting had no certain or positive knowledge with relation to the agency of Cooper, further than the information, that he received from Baker; and the fact, that Cooper had removed from the vicinity of Whiting, rendered it difficult for him to acquire any information with regard to it. But in point of fact, the matter never came to the knowledge of Whiting, until after the time had entirely elapsed, within which it could have been used as evidence in the original cause, or he could have been capa-

ble of giving any instructions in regard to it, under the effect of Norris v. Le Neve, 3 Atk. 35. Gilb. Forum Rom. 187.

Again, inasmuch as the matter lay within the knowledge of the original plaintiffs, and they were in conscience bound to discover it, the decree has been obtained by fraud, and ought therefore to be set aside. Manaton v. Molesworth, 1 Eden, 18. If the fact was, as Cooper states it in his affidavits, it must have been known to the plaintiffs and parties in interest in the case, and they had a double interest in concealing their knowledge of it, and shutting up every avenue that might lead to it. They have, therefore, been guilty of an imposition upon the court.

The arguments against the petition were substantially as follows:

1st. If this is a mere petition for a rehearing, it must be for error, apparent on the decree, or pleadings and evidence. Perry v. Phelips, 17 Ves. 178; 2 Smith, Pr. 62, 64; Story, Eq. Pl. 336; and cases there cited. And the court will not receive new evidence, taken after the decree. Addison v. Hindmars, 1 Vern. 442; 2 Smith, Pr. 32, 33.

2d. If the present proceeding is to be taken as preliminary to filing a supplemental bill, in the nature of a bill of review, the court will not allow it to be filed, unless for the discovery of new matter, material and relevant, and of such a nature, as to make it a fit subject of judgment in a cause; nor unless the evidence establishes satisfactorily, that the new matter did not come to the knowledge of the party or his agent within such time, as that it could have been advantageously used in the original cause. Mitf. Eq. Pl. by Jeremy, 84, 85; Ord v. Noel, 6 Madd. 127; Wiser v. Blachly, 2 Johns. Ch. 488; Livingston v. Hubbs, 3 Johns. Ch. 124; 2 Smith, Pr. 64; Dexter v. Arnold, [Case No. 3,856.]

Reasonable diligence also must be used, if there have been laches or negligence, the title to relief is destroyed. Pendleton v. Fay, 3 Paige, 205; Young v. Keighly, 16 Ves. 348; Blake v. Foster, 2 Ball & B. 457–461; Barrington v. O'Brien, Id. 140. It is contended, that the facts show conclusively, that Whiting knew from the beginning, that Cooper could testify concerning the agency; and that, if reasonable diligence had been used, his testimony could have been obtained, as easily as his affidavit, since the decree. The defendant's want of knowledge of the rules of proceeding, and the want of attention, or just appreciation of the value of the evidence on the part of his counsel, afford no ground for even an enlargement of publication, much less for a bill in the nature of a bill of review. Whitelocke v. Baker, 13 Ves. 511; Cann v. Cann, 1 P. Wms. 727.

But, assuming that reasonable diligence has been used, the newly discovered evidence is immaterial and irrelevant; and it is consistent with the mass of evidence, pro-

duced by the plaintiffs, so far as it relates to the agency of Whiting.

Again, this is a proposition to prove a fact, before in issue, and therefore is objectionable, as being cumulative. The authorities are wholly against it. Wood v. Mann, [Case No. 17,953;] Respass v. M'Clanahan, Hardin, 352; Bowles v. South, Hardin, 461; Head v. Head's Adm'rs, 3 A. K. Marsh. 121. Besides; the granting of such a bill is not a matter of right, but rests wholly in the sound discretion of the court, (Story, Eq. Pl. p. 332, § 417, and cases there cited,) and, under the circumstances of this case, it should be denied.

Again, assuming that the evidence is material, the decree should be sustained, because, Whiting was tenant in common with Tidd's heirs and Stimpson, and therefore purchased for the benefit of his co-tenants, on the 7th of August, 1821, and must account to them. Fonbl. Eq. (Last Ed.) bk. 2, c. 5, § 1, note c, p. 423; Van Horne v. Fonda, 5 Johns. Ch. 407; Farmer v. Samuel, 4 Litt. (Ky.) 187.

The court took time to advise; and afterwards the following opinion was delivered.

Before STORY, Circuit Justice, and DAVIS, District Judge.

STORY, Circuit Justice. The petition in this case involved some novelty, as well as some nicety, as to the practice of courts of equity, in regard to the rehearing of a cause, and the introduction of new evidence after the cause has been argued, and an interlocutory degree has been pronounced, but before a final decree has been entered; and on that account we were desirous to take a little time to consider it, before we delivered our judgment.

It is plain, that a rehearing alone, without the introduction of the new evidence, would be utterly useless, since (as the learned counsel admit) they could not hope to change the opinion of the court upon the actual posture of the facts, originally in the cause. The main scope of the argument has, therefore, been addressed to the consideration of the new evidence. And it seems to us, that if it would have furnished a sufficient ground for a bill of review, or a supplemental bill in the nature of a bill of review, if a final decree had been pronounced, then it is competent for the court, in the present stage of the cause, to order a rehearing, and to direct the new evidence to be taken and brought before the court at the rehearing, as a part of the proofs in the cause. In this way complete justice may be done between the parties. But to compel the petitioner to wait until a final decree, and then to apply for a bill of review, or a bill in the nature of a bill of review, would not only occasion great delay, but also great expense to the parties, which ought, if practicable, to be avoided. The only other mode, by which the new matter can be brought before the court, is by a supplemental bill; but this course does not

seem to us absolutely indispensable in a case, exactly circumstanced, as this is. See Story, Eq. Pl. §§ 337, 393, 890, and the authorities there cited; Gilb. Forum Rom. 49; Patterson v. Slaughter, 1 Amb. 292, 293. Indeed, the objection in this form has not been made at the bar; and the argument has proceeded upon the implied understanding, that, if the new evidence be admissible at all, the parties are content, that it should be received at the rehearing as more convenient, as well as less dilatory to them, than a more formal proceeding. In Standish v. Radley, 2 Atk. 177, Lord Hardwicke, upon a petition of the defendant, directed a rehearing of the original decree (it not being enrolled), and allowed the defendant to file a supplemental bill to bring before the court, at the rehearing, proof of certain releases, not before in issue, or known until after the decree. In Norris v. Le Neve, 3 Atk. 26, 32, 33, a petition for a rehearing, and to bring a bill in the nature of a bill of review, where the original decree had been made upon a bill and cross bill, was preferred before Lord Hardwicke by the defendant, partly upon new proofs, which were not before known, and partly upon new matters, which were not before in issue, after an interlocutory decree, and before the final decree. Lord Hardwicke was of opinion, that all the matters were sufficiently before the court upon the original hearing, upon the allegations in the original bill and cross bill, in the cause; and, therefore, that the defendants did not need a bill of review to bring the equity fully before the court. He also thought, that the new proofs offered were not new discoveries; and, therefore, he denied the petitioner. In Earl of Portsmouth v. Lord Effingham, 1 Ves. Sr. 430, upon the petition of the defendant, Lord Hardwicke allowed a bill of review to be brought upon new matter discovered since the decree, going to the title originally in issue. See Patterson v. Slaughter, 1 Amb. 293. In Attorney General v. Turner, 2 Amb. 587, the same great judge allowed a rehearing and a supplemental bill upon matters not before in issue, and newly discovered, upon the petition of the defendant. These seem all to have been cases, where a final decree had been pronounced by the court. But in Barrington v. O'Brien, 2 Ball & B. 140, and Blake v. Foster, Id. 457, Lord Manners allowed a rehearing, and a supplemental bill to be filed by the defendants upon newly discovered facts, after an interlocutory decree. The doctrine of these cases was fully recognized by Mr. Chancellor Kent, in Wiser v. Blachly, 2 Johns. Ch. 488, and Livingston v. Hubbs, 3 Johns. Ch. 124, and by the circuit court in Rhode Island in Dexter v. Arnold, [Case No. 3,856.] It is clear, therefore that the defendant would be entitled to relief by a rehearing, upon filing a supplemental bill, under the direction of the court, stating the new evidence, if it be of such a nature, and under such circumstances,

as that he might have relief upon a bill of review, or a bill in the nature of a bill of review; but not otherwise. The rule, I take to be clear, that such a rehearing, and such a supplemental bill, will be granted only, when the party could entitle himself to relief upon a bill of review, or a supplemental bill, in the nature of a bill of review, after a final decree.

The questions then properly before the court are, first, whether the defendant, Whiting, had knowledge, or could, by reasonable inquiry and diligence, have acquired knowledge of the facts stated in Cooper's deposition, (for the other affidavits are merely explanatory, and of little consequence without that,) before the publication of the evidence, or before the hearing, which was a year afterwards, so that he might have availed himself of it before the decree. If he had such knowledge, or could by reasonable inquiry and diligence have obtained it, then it is clear upon the authorities, that he is not now entitled to any relief. The cases before cited, as well as Young v. Keighly, 16 Ves. 348, and Partridge v. Usborne, 5 Russ. 195, are directly in point. See, also, Story, Eq. Pl. § 414, and cases there cited. Secondly, whether, supposing the former point to be decided in favor of the defendant, Whiting, the evidence of Cooper is of such stringency and force, and relevancy, as that it justly might, and ought to entitle him to a reversal of the decree, by overcoming the former evidence in the cause, as well as the receipts, now produced by the plaintiffs from Whiting, by one of which he acknowledges himself to have received in April, 1816, from Jacob. Tidd, $26.91 for his proportion of taxes on township No. 12, (the land in controversy,) for 1814 and 1815; and by the other to have received from Samuel Stimpson, in October, 1817, the sum of $5.57 in full of taxes on the same township for 1816 and 1817, which receipts certainly point very distinctly to an agency in the land by Whiting for those, under whom the plaintiffs claim title.

As to the first point. The great object of the new evidence is to establish, that Cooper was, in fact, the agent of Stimpson & Tidd, and Tidd's heirs, as to their interest in the township No. 12; and thus to repel the allegations of the bill, that Whiting was their agent, and to support his answer, denying such agency; and further, to show, that, upon notice from Cooper in 1821 of the sale of the lands for taxes, Stimpson declined to redeem the same; and thereby to raise a presumption, that Tidd, or Tidd's heirs, had knowledge of the sale, and acquiesced in the same manner without intending to redeem. The presumption certainly applies with no force to Tidd, who was at that time dead, or to Tidd's heirs; for his heirs were all at that time under age, and incapable of waiving or affecting their own rights in the lands.

Upon the actual posture of the evidence, it seems difficult to assert, that Whiting had not full knowledge, before the cause was at issue, that Cooper was the agent of Stimpson & Tidd, and other non-resident proprietors. Whiting in his affidavit admits, that he knew, that Cooper was agent for several non-resident proprietors of the township, at least from 1816 or 1817 up to the time of the sale, he himself having become a proprietor, under a levy in execution, of a large interest in the same township, as early as 1813. But he adds, that he did not know, that Cooper was the agent in special (without explaining what he means by these words) of Tidd & Stimpson, and of the heirs of Tidd, as Cooper has stated in his affidavit, for their lands in the township. Now, this last allegation must be received with the qualification, which Whiting has in another part of his affidavit referred to, viz. that he (Whiting) was informed by Baker (the plaintiff), in 1835, that Cooper had been formerly the agent for non-resident proprietors in certain townships generally, and among them he believes Baker mentioned, of Stimpson & Tidd, for Township No. 12. Now, this must have been nearly or quite three years before the publication of the testimony, and four years before the hearing of the cause, at May term, 1839. It is difficult, under such circumstances, to resist the conclusion, that Whiting was thus put upon inquiry and the exercise of diligence, as to the agency of Cooper; for, if Cooper was, at the time of the sale, and for years before, the known and active agent of Stimpson & Tidd, it would be most important evidence to repel the presumption, that he was himself also their agent.

What strengthens this conclusion, and, indeed, establishes it almost beyond controversy, is the fact, stated by Whiting in he same affidavit, that at the time, when his counsel was preparing his answer to the bill, he mentioned the circumstance of Cooper's agency to the counsel; but he was then informed, that it was not material, who was the agent of Stimpson & Tidd, if he (Whiting) was not. Certainly, as matter to be put into the answer, it was not material; but as matter of evidence to disprove Whiting's own agency, it was and must have been very material. That at the moment, when the answer was drawing, it did not strike the counsel with its true force, does not reflect any discredit upon his judgment, because that was not the stage in the proceedings, in which it was required to be weighed and considered. But when the evidence was largely gone into, at a subsequent period, to establish the agency of Whiting, in support of the allegations of the bill, if Whiting had used even ordinary diligence in bringing it to the view of counsel, it is scarcely credible, that it should have then been passed by with indifference. It went to the very pith of the controversy.

But, then, it is said, that Whiting was misled by the language of his counsel; and

that he ought not to be made a sufferer therefor. But, I apprehend, that no court of equity has ever felt itself at liberty to grant an application of this sort upon the suggestion of an error of judgment, or a mistake of law by counsel, as to the pertinency or force of evidence to be used in a cause. In Norris v. Le Neve, 3 Atk. 36, speaking of new discoveries, which would entitle a party to a bill of review, it is said; "If they (the facts) were known to the parties' counsel, or to their attorney and solicitor, or agents, it is sufficient to rebut such an application, or there would be no end of suits. How many parties are there, that know not the merits of their own cause; but rely on the skill of their counsel or solicitor; and therefore, what counsel or solicitors know, must be allowed to be the knowledge of the parties." And, certainly, it would not do to allow clients to have a rehearing or review of a cause, simply because their counsel have not fully appreciated the merits of their cause, or even have overlooked the importance of certain points of evidence, and therefore have omitted to have it taken for the cause. I am very far from imputing to the learned counsel in this cause the slightest blame. What I wish to state is merely the general rule, which cannot be broken in upon without manifest danger to the interests of all the adverse parties in controverted suits; and it will certainly not do to lay down a new rule for this cause only.

There is another consideration, arising upon Whiting's affidavit. He states, that his acquaintance with the business and concerns of the township, commenced about 1816 or 1817; and he adds; "I then understood, that said Cooper was the agent of a considerable number of the proprietors of said township, and I supposed the major part of them. General Cooper gave numerous permits, on behalf of those proprietors, for whom he acted, without objection from me; and he knew and made no objection to those, which I granted, which was done with his consent." Now, this declaration clearly shows, that Whiting was well acquainted with Cooper's agency for many of the proprietors, as early as 1816 or 1817; and there is no pretence to say, that, being apprized of that fact, he was not put upon inquiry, as to the particular persons, for whom Cooper was agent, as soon as the present bill was brought. It was most natural, that he should actually have made such inquiry; and if he had, Cooper would at once have informed him, that he was the agent of Stimpson & Tidd, as well as of other persons. The very circumstance, that Cooper was the known agent of a large number of the proprietors, whose names were not known to Whiting, ought to have awakened in him a spirit of diligence. There was a still more impressive fact, to which I shall more particularly allude hereafter, which ought to have led him to make the inquiry; and that

is, that he and Cooper, in managing the affairs of the township, mutually advised and acted in concert. "Neither of us (says Whiting) intended, as I believe, to exceed our respective rights, or those, for which we acted, or to exercise them in such a manner as to interfere with each other. I acted with his advice and consent on the part of those, for whom he acted as agent, in giving permission to Raymond & How to erect a saw-mill at the Orange Rips." Now, if Whiting himself was not the agent of Stimpson & Tidd in acts like this, which affected intimately the interests of all the proprietors, it would seem an almost irresistible conclusion, that he deemed the interests of Stimpson & Tidd to be represented by Cooper. It is not a little remarkable, also, that in this very paper, signed by Whiting, and giving the permission to Raymond & How, Whiting states himself expressly to be "the agent of the said township" (No. 12); thus, in effect, assuming to act as the representative of the proprietors.

And, here, it may be as well to dispose of that part of Whiting's petition, which complains of surprise, if not of fraud, in the introduction of that paper, as a part of Raymond's testimony. We think the complaint utterly groundless. That paper was properly introduced under the interrogatory addressed to Raymond for the production of all papers relative to permits to cut timber; and the counter paper, now offered by Whiting to explain the transaction, is in exact coincidence with the conclusion, deducible from the very language and objects, professed on the face of the former. And, if Whiting thought otherwise, after publication of the testimony, for one whole year before the hearing, he might have applied to have had it suppressed, or for leave of the court to introduce the counter paper at the hearing. See Whitelocke v. Baker, 13 Ves. 511. He did no such thing; and his present complaint must be deemed a mere afterthought, upon feeling the full pressure of the evidence at the argument.

But let us see, what is the new evidence relied upon of Cooper, and how far it establishes an exclusive agency in him for Stimpson & Tidd. Cooper, in his deposition, in answer to the first interrogatory, says; "That he acted as agent for John Peck, Esq., the principal owner in township No. 12, by verbal and written request, and by power of attorney, from 1794 to 1813 or 1814; and for Samuel Parkman, Thomas L. Winthrop, George and Thomas Odiorne, and Messrs. Jacob Tidd and Samuel Stimpson, who held under said Peck, by their verbal and written request, up to and including 1820. I was authorized to take a general supervision of their respective interests in said land." In answer to the second, he says; "That from about 1816, the general concerns of the township No. 12 were managed by Timothy Whiting (the defendant), who became the largest owner in 1813, and, considering me as the

agent for the non-resident proprietors, above named, consulted me on all measures proposed for the general benefit. But no special communication with said Jacob Tidd or Samuel Stimpson, or any other of the above named proprietors or their heirs, was either made or received, other than before mentioned, as in my first answer; and no particular power was given or accounts settled, except that of the general agency of said township, unless where the proprietors redeemed their lands, and had them set off in severalty." In answer to other interrogatories, he says, that Whiting, to his knowledge, never assumed to be the agent of Tidd or Stimpson, or either of the before named non-residents; or to the best of his remembrance, ever undertook to act on account of any other than himself, and in his own right, except with his advice, given as agent of the said non-resident proprietors. That he considered himself as acting for the non-resident proprietors generally; and, as Whiting managed the general concerns of the township, he occasionally informed him (Cooper), as agent for the non-resident proprietors, of his proceedings, that he might make the necessary communications to them. That he (Cooper) paid the taxes of the non-resident proprietors of the township No. 12, until 1820. That he never had any written power, or authority to act as agent for Tidd & Stimpson, in relation to township No. 12; but so acted by their verbal request. That he had a special power in 1803, from them to act in their behalf, under the direction of John Peck, for township No. 11. That he had no letters from Tidd & Stimpson to himself, and no copies of any letters to them. That he considered his agency for Tidd and Stimpson at an end, when they neglected or refused to redeem their land. That in the winter of 1821, and the fall following, he was in Boston, and had personal interviews with Stimpson respecting his and Tidd's land in the township No. 12; and Stimpson utterly refused to redeem, and gave him to understand, that Tidd's heirs also refused to redeem, stating as a reason, that the land was not worth redeeming; that in the winter of 1821, Tidd was too sick to be seen, and that in the fall he had deceased.

This is the substance of Cooper's testimony. And the first remark, which is called for, is, that it is merely cumulative to the issue made in the original pleadings, that of the agency of Whiting, and is supposed, by affirming the agency of Cooper, to negative that of Whiting. We shall presently see, how far that conclusion is justified. Now, it seems to be a general rule, perhaps not strictly a universal rule, in proceedings of this sort, not to allow a rehearing and a supplemental bill upon new discovered evidence, which is merely cumulative to the litigated facts already in issue. Such was the opinion of Mr. Chancellor Kent, in Livingston v. Hubbs, 3 Johns. Ch. 124, and it was in some measure recognized in Dexter

v. Arnold, [Case No. 3,856.] But waiving this consideration, another remark, which strikes the mind upon the first blush of the deposition, is, that it distinctly and unequivocally shows, that as early as 1816, and from thence upwards, Whiting had the most thorough knowledge of Cooper's agency for the non-resident proprietors, that he advised with him in all the concerns of the township, and acted under his advice in all measures, which respected the general interests of the proprietors. Cooper expressly asserts, that from about 1816, the general concerns of the township were managed by Whiting, with his advice and consent, as agent of the non-resident proprietors; and among these were Stimpson & Tidd. So that, in fact, according to this very aspect of the case, Whiting was a sub-agent, as to the whole affairs of the township for those proprietors, and acted as such up to the very time of the sale. Now, a sub-agent is just as much disqualified, as an agent is, to make a purchase in opposition to the rights and interest of his principal.

But it is said, that Whiting did not, in fact, know, that Stimpson & Tidd were non-resident proprietors, for whom Cooper was "in special" an agent. Be it so. But how does that help the matter? He had the means of knowing, if he chose to inquire; and he undertook to act under Cooper for all for whom Cooper was agent. Nay, it appears to me, that Cooper's testimony justifies the court in saying, that Whiting understood, that Cooper acted as agent for all the proprietors, except those, for whom Whiting undertook to act, as agent, in managing the general concerns of the township. It is not even shown, that there were any other proprietors of the township, except Whiting and those for whom Cooper purported to act. There are some twenty receipts and permits between 1816 and 1821, in which Whiting acted and signed "for the proprietors," or authorized acts to be done, affecting the interests of all the proprietors, such as the cutting of logs on the township, besides the Orange Rip contract, where he describes himself "as agent of the township." Besides; it is perfectly clear from the receipts now offered as new evidence, that Whiting positively knew, that Stimpson & Tidd were non-resident proprietors; and he actually received from them the taxes on their lands in the township, in 1816 and 1817. Now, at that time, he either acted as their direct agent, or as their sub-agent under Cooper in the payment of these taxes; and therefore, in either view, there is difficulty in presuming, that he did not know, whether Cooper was acting "in special" for them or not.

But the other part of the conclusion attempted to be drawn from Cooper's testimony, that he was the exclusive agent, is also incumbered with many difficulties. Cooper may have been an agent of Stimpson & Tidd, and not exclusively their agent. We

have seen, that in the receipts and permits already referred to, Whiting acted as agent for the proprietors generally, and not for a part thereof. He nowhere signs, as sub-agent under Cooper. The receipts given by Whiting to Stimpson & Tidd, for the taxes in 1814, 1815, 1816, and 1817, profess no such sub-agency; but are apparently acts done by a primary agent. If Cooper means to affirm, that he always paid the taxes during his agency, until 1820, for Stimpson & Tidd, these receipts seem to contradict that suggestion. And it is not a little remarkable, that Cooper produces not a scrip of paper of any sort, touching his agency for Stimpson & Tidd, during its whole existence. No letters, no written receipts, no written charges, no written payments are produced. Every thing rests in general oral statements, after the lapse of more than twenty years.

But what presses upon my mind with peculiar force, is this, that from the written documents it is clear, that Whiting during the period assumed to act for the proprietors generally. Can he now be permitted, in order to justify himself in the sale for taxes, to disclaim that agency, and set up an adverse interest? If he can, ought the evidence to be admitted, unless it is perfectly clear, and fortified by written proofs, not dependent upon the frail memory of man? How can such a disclaimer consist with the language of the above receipts for the taxes of 1814, 1815, 1816, and 1817?

These last remarks are properly applicable to the second question, whether the evidence, if admitted, is of such stringency and force and relevancy, as justly to call for a reversal of the decree. To say the least of it, I entertain the most serious doubts upon that point. The most that the evidence properly establishes is, that Cooper acted as the agent of Stimpson & Tidd (not as an exclusive agent) by verbal authority; and Whiting may also have acted in the general concerns of the township for Stimpson & Tidd, by a like general authority, especially after he removed to the township, or managed its general concerns. But upon the other question, that Whiting either knew, or might by reasonable diligence have known, the facts, to which Cooper now testifies, as to his agency, there seems to me to be no just ground for doubt. Cooper's evidence on this point, in no proper sense, comes within the rule for the admission of new discovered evidence, according to the doctrine of courts of equity.

In respect to that part of Cooper's testimony, which states, that he communicated to Stimpson, in 1821, the tax sale, and he declined to redeem, it is a fact, that is not put in issue in the cause, and therefore, could be brought forward only by a supplemental bill. If it were admitted, it could not affect Tidd's heirs, but Stimpson only, for the reasons already stated. But there is this additional consideration, that if the cause were to be decided upon this ground, it would be upon the testimony of a single witness speaking to facts after twenty years, and to a confession, incapable, it may be, of being rebutted, after such a lapse of time. Besides; what is very material, is, that it does not appear, that Cooper ever communicated to Stimpson, that Whiting was the purchaser at the tax sale, or to Whiting, that Stimpson declined to redeem. These would be highly important ingredients if the defence had originally proceeded upon the ground, that Whiting was constructively, or expressly the agent of Stimpson & Tidd, and that they by their long acquiescence in his purchase, had waived the agency and right to redeem. But, if Whiting's defence, as now made, is to stand, that there never was any agency whatsoever for them, it does not seem practicable to give him the benefit of any such fact.

Upon the whole, our judgment is, that the petition ought not to be granted, and therefore, that the interlocutory decree already pronounced ought to stand.