<small>RUGELY<br>v.<br>SUN MUTUAL<br>INSURANCE CO.<br>OF NEW YORK.</small>

departure, as to call upon the insured to give strong evidence to repel the presumption.

We feel a reluctance, however, to close the case upon this point against the plaintiffs, for two reasons: The district judge did not act upon it, so that we have not the benefit of his opinion as to the weight of evidence; and the plaintiffs may have been thrown off their guard, in the preparation of this branch of the litigation, by the fact, that the underwriter originally made no objection on that score, to the payment of the loss. We have thought it best, under all the circumstances, to leave the matter open for future inquiry.

The district judge, as we have already stated, decided the case against the plaintiffs on another ground, which we proceed to consider. The policy states: that "in case of the loss of the vessel, or a part of the cargo, or of damage to the whole or part thereof, it shall be the duty of the master to forward such parts of the cargo, as shall be saved in a fit condition to be shipped to its port of destination, by the best conveyance obtainable, at the place where the said goods may be, or at any other place within a reasonable distance, and the enhanced expense, not exceeding the amount insured, shall fall on the insurers."

From the evidence, it appears that the cotton was in a fit condition to be shipped to New Orleans. The means of transportation to New Orleans, could have been had within a reasonable time. There were means of consulting underwriters, and others interested, before selling, and no inexorable necessity that compelled an immediate sale. There was an inexcusable precipitancy, and, as we infer, an inexcusable want of publicity in the time and manner of the sale. There was an inexcusable haste and looseness in the proceedings for arbitration as to the salvage. The recommendation of the surveyors, that the cargo should be sold; the sale of the cargo; the agreement with the salvors. to arbitrate the award, all bear date on the same day, the 3d July, 1851.

In view of these facts, of the well settled principles of law, and especially of the stipulation in the policy, we have no hesitation in concluding with the district judge, that the sale was illegal, the abandonment inefficacious, and the claim for a total loss unfounded.

But we are not prepared to say with the court below, that the plaintiffs are thereby precluded from any relief. If the vessel was unseaworthy, there is of course an absence of all claims for the loss against the defendants. But if she was seaworthy, we see no reason, as at present advised, for the entire discharge of the underwriters, by reason of the failure to forward the cargo. The plaintiffs, it seems to us, would still be entitled to indemnity as for a partial loss.

It is therefore decreed, that the judgment of the district court be affirmed, but without prejudice to the right of the plaintiffs, to sue for a partial loss; the costs of the appeal to be paid by the plaintiffs.

PRESTON, J. In this case, I desire to express no opinion as to the law or evidence with regard to the seaworthiness of the vessel at the commencement of her voyage, but fully concur in the remainder of this opinion.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## THE STATE v. BENITO ALVEREZ.

<div align="right"><small>7 283<br>49 961<br>7 283<br>109 351</small></div>

The clerk of a court, to which a criminal cause is removed for trial, should endorse on the indictment and other papers received by him from the court, where the indictment was found, that he filed them. Yet where he failed to do so, and the prisoner was put upon trial,

but before verdict, a motion was made to endorse the papers *nunc pro tunc*, it was held: That the court had the custody of the papers, and it was its duty to grant the motion.

Objection to the pannel or polls cannot be taken advantage of, if not made by challenge, when the jury or jurors are presented to the prisoner on trial. He cannot take the chance of a verdict in his favor, by a jury of his choice, and afterwards object to that jury.

The newly discovered evidence, which entitles a party to a new trial, is such as ought to produce, on another trial, a different result on the merits.

APPEAL from the District Court of the Seventh Judicial District, *Stirling*, J. *Lyons*, for the State. *James H. Muse*, for the accused. By the court:

PRESTON, J. The prisoner having been prosecuted, tried and convicted of murder, and sentenced to imprisonment at hard labor in the penitentiary for life, has appealed. He was indicted, arraigned and plead in the parish of East Feliciana, the homicide having been perpetrated in that parish.

Under the 115th article of the Constitution, authorizing a change of *venue*, and the Act of the 1st of June, 1846, to carry it into effect, the accused made the necessary allegations and proof, and obtained an order that the case should be transferred to and tried in the parish of West Feliciana. The clerk of the district court of the parish of East Feliciana transmitted the papers and copies of the proceedings, to the clerk of the court of the parish of West Feliciana, as required by the statute, and the sheriff of the one, delivered the prisoner to the sheriff of the other parish.

The 13th section of the Act of 1846 provides, " that the clerk of the court to which any criminal cause shall be removed, shall, on receipt of the indictment and other papers, enter the cause on the criminal docket of his court, and the said cause shall be heard, tried and determined by the court, by preference, in the same manner as if the proceedings had originally been instituted therein," p. 109.

The case must have been entered on the criminal docket of the court, for an order was made in the case by its title, " *The State of Louisiana* v. *Beneto Alverez*," directing a jury to be summoned for the trial, and the list of that jury was served upon the prisoner on the 10th of December, 1851, by the sheriff of West Feliciana. And on the 18th day of the month it appears, by an entry in the case, that the prisoner was brought by the sheriff to the bar of the court, on the charge, and declared himself ready for trial, and was put upon his trial before a jury. But, before they rendered their verdict, it was discovered that, from some oversight, the clerk of the district court of West Feliciana had not endorsed on the papers sent from the parish of East Feliciana, that they were filed, though they were clearly in his possession and keeping as clerk, and were used on the trial.

The law did not expressly declare that they should be filed, though it was undoubtedly proper that it should have been done. Therefore the court, as soon as the omission was discovered, on motion of the district attorney, and in the presence of the prisoner and jury, on the 19th of December, 1851, ordered them to be filed as of the 9th of December, *nunc pro tunc*. The court had the control of the records, and it was its duty to order this to be done for their safety and authenticity. The failure to file the record and documents was a mere omission, and the judge, without causing injury to any one, directed that which was proper to have been done some days before, to be done, when the omission was noticed. This so frequently occurs in practice, from unintentional oversight, that the phrase *nunc pro tunc* is familiarly known as a law term, which is used on such occasions to express, that a thing is done at one time which ought to have

been performed at another. The only qualification in relation to it, in judicial proceedings, are, that it ought to be done; that it be done by the leave or order of the court, perhaps in the presence of the parties interested, and that it be done to answer the purposes of justice, and not to do injustice.

No injustice was done in the present case. It was not, as contended, the filing of the documents, that gave the court in West Feliciana the jurisdiction of the case, and the jury power to try the prisoner. His successful motion to change the *venue* for the trial of an indictment found against him for murder, from East to West Feliciana; the delivery of his person by the sheriff of one parish, to the sheriff of the other, for trial; and the transmission of all the proceedings against him from one clerk to the other, were the things which gave jurisdiction to the court that tried him, and power to the jury to pass upon his case and acquit or convict. The filing of the papers was a mere form which, without any possible injury to the prisoner, was complied with as soon as it was discovered that it had not been seasonably done.

Similar omissions have, no doubt, often occurred in judicial proceedings in criminal cases and been corrected in the same manner, and yet we have no precedent, that the correction has been regarded as objectionable by any tribunal. The objection must be supported by authority or fail, for it is intrinsically without any substantial foundation.

The motion in arrest of judgment, based upon this important matter, cannot therefore, prevail.

Nor can the judgment be arrested on account of the charge of the court in relation to it. It was immaterial to the power to try the prisoner; immaterial to his guilt or innocence, as to which; a proper issue between him and the State was presented, in a proper manner, and before a competent tribunal. And, therefore, the charge of the court, that the jury had nothing to do with the oversight in not filing the papers, and the correction of the omission, was correct; and even if the judge illustrated his opinion by an erroneous view, as to defects in an indictment, it cannot make that material in the case, which was intrinsically immaterial.

Three of the jurymen, who were on the list served upon the prisoner to pass upon his trial, were excused, one on account of age, and two as being school directors. A pannel of forty-eight was provided by law, and summoned in the case, for the express purpose of insuring a speedy trial, and that the case might not be continued in consequence of a deficiency of jurymen from any cause. The prisoner made no objection to the pannel, and did not ask for a continuance of the case. In this respect, the case is entirely different from that of *The State* v. *Howell*, in which a continuance of the case was prayed for, on account of such a disparity between the list served upon him, and the number summoned for the trial, as might have operated great injustice, and, in effect, have destroyed the beneficent provision of law, that he should be served two days before the trial, with the list of the jury summoned to try him. *State* v. *Howell*, 3 Ann. 51.

We have often held, that objection to the pannel or polls, cannot be taken advantage of, if not made by challenge when the jury or jurors are presented to the prisoner for trial. He cannot take the chance of a verdict in his favor, by a jury of his choice, and afterwards object to the jury when the verdict is rendered against him.

The testimony of *White*, discovered since the trial, was cumulative alone. It may be reconciled with the testimony on behalf of the State. And we concur with the district judge, who has stated it in connection with the evidence of the

STATE
v.
ALVEREZ.

State, that it ought not to have changed the verdict. It is laid down as an elementary rule by Wharton, 664, that in order to grant a new trial on account of newly discovered evidence, it must be such as ought to produce, on another trial, an opposite result on the merits : and several authorities are cited in support of this principle. We substantially recognized it in the case of *The State v. Brette*, 6 Ann. At all events, we would not interfere with the discretion of the district court in refusing a new trial, because testimony, merely cumulative, might be produced. The authorities are numerous in support of the ruling of the district court. Whart. Crim. Law. 661. 1 Story, 218. 1 Sumner, 482.

The counsel contends, that facts stated by the judge assimilates the case to the facts proved on *Selfridge's* trial, and that we have approved the principles of law laid down in that case, and therefore infers that the result should be the same. We have approved those principles, but doubted their application to that case, and think they have no application to the case under consideration.

The judgment of the district court is affirmed, with costs.

Application for a re-hearing refused