## Case No. 3,743.

DE FLOREZ et al. v. RAYNOLDS et al.

[16 Blatchf. 397;[1] 4 Ban. & A. 331.]

Circuit Court, S. D. New York. June 9, 1879.

DECREES IN PATENT CASES — APPLICATION FOR REVIEW—NEW ANTICIPATION — SUFFICIENCY OF EXCUSES.

In a suit on a patent, after an interlocutory decree in favor of the plaintiff, the defendant applied to the court for leave to file a bill to review the proceedings and the decree, and to amend the answer by setting up two French patents against the novelty of the plaintiff's patent, on the ground that, if the French patents had been in evidence, the decision would have been different. The application set forth, (1.) that the defendant was ignorant of the existence of the French patents until after the proofs were closed; (2.) that he did not know of their relevancy and materiality until after the decree was made and after he had employed new counsel; (3.) that the defendant's ignorance, and the insufficiency of a prior application, made after the proofs were taken and before the hearing, to admit said patents in evidence, was solely due to the inexperience and lack of legal knowledge of his former counsel; (4.) that, in selecting such counsel, the defendant was mistaken: _Held_, that the excuses offered were not sufficient to warrant the granting

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

of the application, and that it was not clear that the result would have been different if the French patents had been in evidence.

[Cited in Page v. Holmes Burglar Alarm Tel. Co., 2 Fed. 333: Witters v. Sowles, 31 Fed. 10: Austin v. Riley, 55 Fed. 838. Followed in Adair v. Thayer, 7 Fed. 920.]

In equity.

W. K. Hall and J. J. Marrin, for plaintiffs.
Edmund Wetmore, for defendants.

BLATCHFORD, Circuit Judge. The bill in this case was filed in May, 1875. It named as defendants Charles T. Raynolds, Thomas B. Hidden, Leonard Richardson and Edward L. Molineux, as members of and composing the firm of C. T. Raynolds & Co. In August, 1875, Aquila Rich was added as a defendant, as a member of said firm. In June, 1875, the four defendants originally made such put in an answer to the bill, which set forth that Rich was a member of the firm. The answer was sworn to by the defendant Richardson, and the name of George F. Martens was appended to it as attorney for the defendants, above the signature and oath of Richardson. The answer set up that Bouvet was not the original and first inventor of the patented invention, and other defences. A replication was filed to the answer. The taking of proofs for the plaintiffs began January 10th, 1876. The defendants took proofs on several days in March and April, 1876, Mr. Martens conducting the examination a part of the time, and Mr. Whitney a part of the time. The plaintiffs put in rebutting evidence on three days in April, 1876. The case was then ready for hearing. In October, 1876, a motion was made on the part of the defendants for leave to put in evidence on their part a French patent granted to Martin de Lignac, dated May 19th, 1847, No. 5,630, and the certificates of addition forming part thereof, and a French patent granted to one Dupas, dated December 2d, 1847. This motion was founded on two affidavits, one made by Mr. Whitney, the defendants' counsel, and the other by the defendant Richardson, both of them sworn to the 2d of October, 1876. The affidavit of Mr. Whitney set forth, "that he is an attorney and counsellor at law residing and doing business in the city of New York; that he has been attorney in fact for the defendants in the above entitled action, from the inception of said action, and that, since about the month of May last, he has been counsel for said defendants; that he has been fully familiar with the progress of the said action, and with the nature of the testimony produced therein by, or available to, the said defendants, in said action; that neither he, nor, to the best of his knowledge and belief, any other person connected with said action in behalf of defendants, was aware that the French patent granted to Martin de Lignac, May 19th, 1847, No. 5,630, and the certificates of addition forming part thereof, contained

matter relevant or bearing upon the issues or subject matter of the above entitled action, but that, on the contrary, said defendant had no reason to suppose that said patent contained matter proper in evidence in said action, until after the testimony had all been taken, both for the complainants and the defendants in said action, but that, after the closing of such testimony, he became aware, that said French patent and the certificates of addition forming part thereof, did probably contain matter which should be produced in behalf of defendants in the above entitled action, from his connection with another and different matter, and with due diligence did proceed to obtain copies duly certified, of said French patent and the certificates of addition forming part thereof, in accordance with the usage of the French government in such cases; and that he hath also with due diligence obtained a translation of said copy, which now, in connection with the certified copy hereinbefore named, he lays before this court, praying that the above entitled action may be reopened for the admission of the aforesaid French patent and certificates of addition forming part thereof, as hereinbefore set forth, as evidence in behalf of the defendants in the above entitled action; and defendant also prays that said action may also be reopened for the admission in evidence of a certain French patent, granted to one Dupas, dated December 2d, 1847, which deponent is informed and believes describes 'boxes with a band or a wire bound around top; ring at the overlapping end for opening the box; tearing off band by pulling,' said patent last mentioned, as also the French patent to De Lignac, as deponent believes, being a direct anticipation of the United States patent granted to Jean Bouvet, on or about the 28th day of June, 1864, upon which the complaint in the above entitled action is based, but which said patent to Dupas ·deponent has not been able as yet to examine, or to obtain copies or translations of the same." The affidavit of Richardson set forth, "that he resides in the city of Brooklyn, and is a member of the firm of Charles T. Raynolds & Co., the defendants in the above entitled action, and that the said firm has confided to his charge all business affairs relating to said action; that he had no knowledge of the French patent granted to Martin de Lignac, dated May 19th, 1847, No. 5,630, or the certificates of addition forming part thereof, contained matter relevant to the subject matter or issues of the above entitled action; and that he, the said deponent, was first made aware of the existence of such French patent, its certificates of addition, &c., and the contents thereof, by James A. Whitney, counsel for defendants in the above entitled action, on the second day of October, 1876, and that, to the best of his knowledge and belief, no other member of said firm of C. T. Raynolds & Co. is aware of such pat-

ent or· of the nature of the matter contained therein." This motion was argued by Mr. Jacques for the defendants, and was denied by this court. This cause was heard on the pleadings and the proofs, by Judge Wheeler, who decided it in favor of the plaintiffs (De Florez v. Raynolds [Case No. 3,742]), and, on the 29th of June, 1878, an interlocutory decree was entered in favor of the plaintiffs, awarding a perpetual injunction and an account of profits.

On the 16th of October, 1878, the defendants gave notice of an application to this court for leave to file a bill for the purpose of having the proceedings in this suit, and especially the decree therein, reviewed, reversed and set aside, and that all proceedings had therein and thereunder be vacated and set aside, and that no further proceedings be had therein or thereunder, and that the answer in this suit be amended by setting up the new matter set forth in a petition on which such application was founded, and that this suit be reheard. The said petition is sworn to by all the defendants except Rich. The petition sets forth that the said decree has been enrolled; that the injunction under it was served July 2d, 1878; that the. accounting is being proceeded with; "that, since the time of pronouncing said decree, your petitioners have discovered new matter of consequence in the said cause," particularly the French patent of Dupas, dated December 2d, 1847, and the addition thereto dated March 14th, 1848, and the French patent to De Lignac, dated May 19th, 1847, and the addition thereto dated December 6th, 1847, and the second addition thereto dated February 19th, 1848; and that, if the said two French patents had been read in evidence and considered by the court, said decree would almost certainly not have been made, but it would have been decided either that the plaintiffs' patent was void for want of novelty, or that the defendants did not infringe it. The petition sets forth the reason for so stating, founded on a comparison of the contents of the Dupas and De Lignac patents with the plaintiffs' patent. It also states, that, when this suit was brought, the defendants referred the matter of defending the suit and doing all things requisite therefor, to the defendant Richardson, as the one among them the best qualified to take charge of such matter, he having the supervision of the cans made, used and sold by the defendants. It then proceeds: "And Leonard Richardson, one of your petitioners, says, and the other of your petitioners say, upon information and belief, that the said Richardson immediately consulted James A. Whitney, Esq., of New York City, formerly their attorney and counsel in the said suit, whom your petitioners were recommended to employ, to advise them and defend the suit, by one G. H. Churnock, the inventor and patentee of the can used by your petitioners, Mr. Whitney having ·solicited his said patent and others relating

to cans, and thereby acquired an extensive knowledge of the state of the art, and as a competent person to advise your petitioners and to defend the suit. And your petitioners, being informed by Mr. Richardson that he had been acquainted for a little time previous with Mr. Whitney, and that he was a counsellor in patent causes, and made a specialty of such matters, and supposing that he was a counsellor of this court, of extensive experience, your petitioners employed and directed Mr. Whitney to investigate the plaintiffs' claims, to advise them as to the validity thereof and the course to be pursued by your petitioners in the action, and to do whatever was requisite and proper for maintaining such defences as might be available to them. Your petitioners were not acquainted with the patent laws of the United States, and were not aware that a patent is not authorized to be issued for an invention which has been previously described in a foreign publication, or patented abroad, and relied, therefore, upon the professional knowledge of Mr. Whitney, the advice which he should give them and his acts in their behalf. After Mr. Whitney had, as they were informed and believed, investigated and considered the matters intrusted to him as aforesaid, they were advised by him that the plaintiffs' patent was void for an irregularity in the application for it, and also that the cans made by your petitioners were not an infringement of the plaintiffs' patent, both of which points the court, by its said decree, decided against your petitioners. Your petitioners have been, since the decree, informed that no search was made among the records of foreign patents, for anticipations of the plaintiffs' said reissued patent. They did not themselves make such a search, because they were not, any of them, aware that such search would have been usual or proper, or that if, in the course of such search, an anticipating foreign patent had been found, it would have availed them as a defence, nor were they aware how or where such a search could have been prosecuted, nor were they advised on the subject, and they had given Mr. Whitney authority to do whatever might be requisite and proper in their behalf. And your petitioners are informed by W. A. Jenner, Esq., one of their present counsel, whose affidavit is hereto annexed, that Mr. Whitney did not make, or cause to be made, a search for such foreign anticipating patents, because it did not occur to him to make such a search, and that he was not aware that such search was usual or proper. Your petitioners further show, that, on or about the 1st day of October, 1876, or shortly prior thereto, as they have been informed by Mr. Whitney, he, while engaged in other business, became aware of the existence of the said Dupas and De Lignac patents, and communicated such knowledge to Leonard Richardson, one of your petitioners, without, however, explaining to him their importance and relevancy to the issues. Thereupon Mr. Whitney made a motion in the said suit, upon the affidavits of himself and the said Richardson, to the end that the said Dupas and De Lignac patents might be admitted in evidence in the said suit, but did not explain in the said motion papers the reasons why the said French patents had not been set up in the answer, or excuse the negligence in not before ascertaining the facts as to said patents. Thereupon, and on or about the seventh day of October, 1876, the said motion was argued before the Honorable Samuel Blatchford, by David R. Jacques, Esq., who was employed by Mr. Whitney, and the said motion was denied without any opinion having been rendered by the court. Your petitioners further show, upon information and belief, that, upon the argument of the said cause before the Honorable Hoyt H. Wheeler, Mr. Whitney attempted, in the course of his argument, to refer to the said Dupas and De Lignac patents, as illustrations of the prior state of the art, but such reference was objected to by the counsel for the complainants, as irregular, on the ground that the same were not a part of the case, whereupon Mr. Whitney desisted from further reference thereto, and your petitioners, therefore, say, that the same were not considered by the court, and no reference to them is made in the opinion. And your petitioners further show, upon information and belief, that, at the time they employed Mr. Whitney as counsel, and that he accepted their employment, Mr. Whitney was not a counsellor of this court or admitted to practice in any court of this state, or qualified to appear therein, or to advise them as to their defence, or to take any steps on their behalf, and that he did not become a counsellor of this court, or of the New York supreme court. until on or about the 26th day of May, 1876; and that George F. Martens, Esq., who appeared as their solicitor, and. as such, signed their answer, was not employed by your petitioners, nor were they acquainted with him, nor did they counsel with him; and, therefore, your petitioners say. that, at the time they were advised as to their defence in the said suit, and the steps proper or necessary to be taken for the protection and maintenance of their interests and rights, and at the time their answer in the said suit was prepared and filed, they did not have the benefit of the advice of a counsellor of this court. Your petitioners further say, that the plaintiffs' attorney and counsel have asserted and still assert, that, in the accounting herein they expect to recover from your petitioners at least $50,000 as profits. and, if your petitioners should be compelled to pay such sum, they believe that they would be unable to recover back the same." The petition is accompanied by an affidavit made by the defendant Richardson. which says: "At the time the suit in the annexed petition mentioned was commenced, I was directed by

my co-defendants to employ counsel and take especial charge of our defence therein, as I was more familiar than the other defendants with our can manufacture, and the subject matter of the litigation. I had been acquainted for about —— years with Mr. Whitney, our former counsel in said suit, and, upon the suit being commenced, was recommended by Mr. G. H. Churnock, the patentee of the can used by us, to employ Mr. Whitney, because he was acquainted with the subject of tin cans as affected by patents, and would be a very competent person to take charge of our interests. Mr. Whitney had also obtained the patent for the can used by us, and, as I was informed, others relating to the same subject, and had thereby acquired an extensive knowledge of the art. I supposed, at that time, Mr. Whitney to be a counsellor at law, my impression being derived from the signs upon his office door, on which he advertised as a solicitor of patents, his possession of a library, and I supposed that he was a lawyer who made a specialty of matters relating to patents, and had acquired an extensive experience therein. I directed Mr. Whitney to investigate the claims of the plaintiffs and advise us upon the subject, and authorized him to do whatever was requisite and proper for maintaining any defences which we might have. After Mr. Whitney had examined the subject of the litigation, he advised me that the plaintiffs' patent was void for an irregularity in the application, and also that the cans made by the defendants did not infringe. When, about the 1st of October, 1876, Mr. Whitney informed me of his being referred by the patent office to the Dupas patent, and that he had a copy of the latter, he did not explain to me the importance of these patents or their scope, nor did I understand that they were anticipations of the plaintiffs' invention, or that it was important that the answer should be amended so as to set them up; and I did not become acquainted with the contents of said Dupas patent, nor understandingly of the De Lignac patent, until the same were brought out by search made by Messrs. Wetmore and Jenner, our present counsel, subsequent to the decree. I intrusted these matters entirely to Mr. Whitney. I supposed that whatever was proper to be done would be regularly done by him. My attention was not called to the fact that George F. Martens, Esq., was attorney of record for us, as I have not had any acquaintance with him, and did not employ him nor counsel with him." The affidavit of Mr. Jenner, referred to above, says: "That on the 7th day of September, 1878, he saw James A. Whitney, Esq., formerly attorney and counsel for the above named petitioners in the suit of Rafael de Florez et al. against them, for the purpose of ascertaining from Mr. Whitney why the Dupas and De Lignac patents, referred to in the annexed petition, were not mentioned in the answer in the said suit. Mr. Whitney

informed me that he discovered the said patents on or about the 1st day of October, 1876, by accident, being referred to them by the commissioner of patents, in an application for a patent which he was then making to the patent office; that he, Mr. Whitney, did not make any search for French patents or other anticipations of the Pinner patent set forth in the complainants' bill in said suits or of the device used by the defendants, for the reason that he had no acquaintance with the French language, or so slight an acquaintance that he could read the said language only by the aid of a dictionary; that the said suit of De Florez against Raynolds was his first case, and he was not acquainted with the practice of examining at the Astor Library for foreign anticipations, and it did not occur to him to make any search or procure one to be made. Deponent further says, that he requested Mr. Whitney to make an affidavit of the facts so stated by him, having told him that he was preparing a petition for a review of the decree in said suit, and desired to use it in that connection, but Mr. Whitney refused to make any affidavit." There is also an affidavit of Mr. Richardson, stating that the petitioners did not employ Mr. Jacques as their counsel, and had no communication with him respecting their defence in the action; and that Mr. Jacques was employed by Mr. Whitney to argue said motion, because of Mr. Whitney's intention to leave the city, and did not at any time advise the petitioners regarding the suit.

This application is made on the ground that the French patents to Dupas and De Lignac are an answer to the charge of infringement, and that the decision of the court, on final hearing, would have been different, if the proofs had embraced those patents. In regard to the omission to introduce those patents into the proofs, it is contended, (1.) that the defendants were ignorant of the existence of those patents until after the proofs were closed; (2.) that they did not know of their relevancy and materiality until after the decree was made, and after they had employed their present counsel; (3.) that the ignorance of the defendants and the insufficiency of the application made in October, 1876, to admit said patents in evidence, were solely due to the inexperience and lack of legal knowledge of Mr. Whitney, so that the defendants were not advised as to the necessity of searching for those patents, nor as to their legal effect when found, and the rules of practice of the court were not followed in the application made for their admission in evidence; (4.) that, in the selection of Mr. Whitney, the defendants were misled and mistaken, and were ignorant of the fact that he was not authorized and qualified to perform the duty which he undertook.

This is not a case of newly discovered evidence. The gravamen of the application is the alleged laches and inexperience and incompetency of Mr. Whitney. If such

grounds were to be admitted as reasons for opening cases, there would never be an end of a suit, so long as new counsel could be employed who could allege and show that prior counsel had not been sufficiently diligent, or experienced or learned. Questions of the kind have often been presented. In Ruggles v. Eddy [Case No. 12,118], application was made to amend an answer and contest the question of the infringement of a patent, which had been admitted, on the ground that, if the defendants' counsel had sufficiently studied the patent and examined the defendants' stoves, the admission of infringement would not have been made. The ground urged was, that the defendants' counsel had not been diligent enough. The court (Judge Woodruff) said: "I am constrained to hold the defendants concluded. Their case, as made by themselves, rests either upon their own want of due diligence, or the want of due intelligence on the part of their counsel. By this the complainant ought not to be so far prejudiced as, after decree, reference and report of the master, to be compelled to go again through the litigation, on a point distinctly presented, and proper to be met at the outset. Their case, as presented by the counsel whom they have employed for the purposes of this motion, and who regards it as clear that, as to most of the stoves which they had made, they had avoided the operation of the patent, seems, at first view, one of hardship; but, if that is so, the defendants have brought it upon themselves, by their own negligence, or by relying on a degree of vigilance, study and accuracy on the part of their several counsel, which they now think was inadequate to their protection. No case has been referred to which, in any degree, tends to sanction the latitude of indulgence which the defendants here seek. Cases are numerous tending in the other direction, of which India R. Co. v. Phelps [Id. 7,025], Hitchcock v. Tremaine [Id. 6,540], Prevost v. Gratz [Id. 11,406], and Livingston v. Hubbs, 3 Johns. Ch. 124, are examples." The same principle is found in Webster Loom Co. v. Higgins [Case No. 17,341], in this court. The case of Cutler v. Rice, 14 Pick. 494, was one of a different kind, and the decision was put on the ground of surprise.

The foregoing remarks are based on the assumption that the matter now sought to be introduced would, if it had been in the case, have led to a decision in favor of the defendants. It is well settled, that, in the case of an application, on the ground of newly discovered evidence, to vacate the decree in an equity suit on a patent, and allow the answer to be amended and the case to be retried, the application can be granted only "for the gravest reasons and the plainest proof of the sufficiency of the newly offered evidence to lead the court to a different result." Buerk v. Imhaeuser [Case No. 2,107]. An examination of the text of the Dupas and De Lignac patents, in connection with the affidavit of Mr. Copeland, leaves it in great doubt whether the plaintiffs' invention is anticipated or whether the defendants' structure is described by Dupas or De Lignac. This is my conclusion, after considering Mr. Renwick's affidavit. The original patent to Dupas refers to a way of opening a box by means of an iron wire, with a looped end, soldered on the cover of the box, but no sufficient or detailed description is given. The addition to the Dupas patent refers to a mode of closing the entire end of a box by applying a thin plate soldered on such end, with a wire ring attached to one end of such plate; and, as Mr. Copeland says, there is also indefinitely described, what appears to be a narrow band of thin metal, with a wire terminating in a ring, the band of metal and the wire being both of them soldered their entire length to the exterior of the box. Mr. Copeland says: "In my opinion, neither the patent nor the addition describes any device with language sufficiently explicit to enable that particular thing to be constructed by a mechanic, with the exception, perhaps, of the plate furnished with a ring and closing the entire end of the box. It does not, in my opinion, describe the invention of the complainants herein." There is no evidence in the case which outweighs this opinion of Mr. Copeland's, and my judgment concurs with his.

As to the original patent to De Lignac, it describes the insertion of a band of lead or pewter, easily cut, between the box and its cover. The first addition is of no importance to this case. The second addition is stated, in the title, to consist "of a tin band added to the lead hoop." The text says: "As it has occurred that boxes having lead or pewter hoops have been damaged by shocks with the tin portions of the boxes, I have been obliged to protect the pewter or lead by a more resistant metal. I have accomplished this in slightly modifying my style of hooped boxes, sufficiently, however, to render this addition to the patent already taken deemed necessary. I have replaced the lead and pewter hoops by a tin band of nearly the same width as the latter. Then I have plentifully soldered this band with lead on the under side to the outside of the cover and of the body of the box. Here the lead solder replaces the original hoop of the first patent, in borrowing from the tin which covers it its resistance to shock. I have been careful to keep the tin band about two centimetres larger than the outer circumference of the box, so that the end of the band, which I terminate by a ring or loop, covers about two centimetres of the part first soldered. When the box is closed, on grasping the ring and pulling, the lead will be easily torn, as, in the former instances, it was easily cut." Mr. Copeland's view of this language is, that it says that the band of lead to be protected may be replaced by a thick coating of lead solder applied to the under side of the tin band, which is then soldered to the cover and the box, so that, on

removing the tin band, the cover is still united to the box, as before, by the lead or other soft metal, which may be easily cut. Mr. Copeland says: "In my opinion, it neither describes nor suggests the invention of the complainants; and, in fact, in placing the lead or solder under the band, it does purposely what the complainants intended to avoid." To say the least, the description is ambiguous. It clearly describes a band of tin lined with lead to close a can. This is not the plaintiffs' structure, nor the defendants', as was held by Judge Wheeler.

The application is refused.

[NOTE. The decree here sought to be reviewed was subsequently amended, on defendants' application. 8 Fed. 434.]