### WITTERS, Receiver, etc., *v.* SOWLES and others.

*(Circuit Court, D. Vermont. May 2, 1887.)*

1. EQUITY—OPENING DECREE FOR FURTHER TESTIMONY.
   A party will not be allowed to open a case and have evidence retaken, where his motion papers fail to show newly-discovered evidence, or evidence of which the party could not avail himself at the first hearing, and where it appears that the party merely wishes to deny what he did not deny before, but which called for denial then as much as at the time of the application for a rehearing.

2. SAME.
   No mistakes of judgment, or want of attention or capacity of counsel, afford any just or proper grounds for granting a motion to open a case.

In Equity.

*Chester W. Witters*, for orator.
*Luke P. Poland* and *Albert P. Cross*, for defendant Burton.

WHEELER, J. Since the decision, and before entry of the decree in this cause, the defendant Burton has moved, on the affidavits of himself, Albert Sowles, D. Noyes Burton, and Albert P. Cross, for leave to take further testimony upon the question of his assent to the loan of $36,000 to Edward A. Sowles, for the loss upon which a decree has been directed to be entered charging him and Albert Sowles.

There were two boards of directors from January 13 to February 11, 1880, each claiming to be the rightful board, both of which included Albert Sowles and one other, and one of them Edward A. Sowles and Burton. The stock of those not in the latter board, and some besides, was purchased by Edward A. Sowles, and paid for with the proceeds of this loan, to settle the difficulty between the two boards. The orator took the testimony of Albert Sowles, in which he testified, April 12, 1886, distinguishing this loan from others not assented to by the directors, that it was approved by all the directors,—the board that went out, and the board that came in, February 11, 1880. He was cross-examined by counsel for the defendant Burton at length, but was asked nothing on that subject. The defendant Burton testified at length in his own behalf. This loan after a while took the form of drafts and accommodation notes. He testified that he had no knowledge of these drafts or notes until shortly before the bank failed, but did not testify about his knowledge of the original loan. Edward A. Sowles testified that it was understood that he should have a loan of $36,000 from the bank in order to pay for the stock, and that the old board of directors approved of the loan by taking the avails of it. Counsel for Burton were present, but did not cross-examine him.

The substance of the affidavits of Burton, in addition to what his testimony was, is that his principal counsel, on whom he most relied, was not present at the taking of the testimony, and that the counsel who was present for him was not familiar with the details of the case; that he had no knowledge of this original loan, but supposed that Edward A. Sowles purchased the stock with his own means; that he was not at St. Albans on February 11, 1880, and did not know what was done there on that day; that he was informed afterwards that the difficulty was settled by the purchase, by Edward A. Sowles, of the stock of three of the persons claiming to be directors who had got out of the way; that he does not recollect that he was informed that he was appointed a director on that day, but has always supposed that he held the office during that year by the election by the stockholders in January; that he has been told by one of the retiring directors that he was not at St. Albans on that day, and that this director did not think that he knew anything at that time about the transactions which took place on that day there; that the retiring directors refused to resign until they had the money for their stock, and it was taken from the bank and paid to them, and a bond of indemnity to them was required by them, and taken from Edward A. Sowles

and Albert Sowles; that this director declined to make affidavit of these facts, but, he believes, will testify to them if compelled; that soon after the dispute among the directors was settled there was an arrangement between him and Edward A. Sowles and his son, D. Noyes Burton, for the purchase of 100 shares of the stock, and that they examined the assets of the bank at that time and found no trace of such a loan, but the arrangement failed for other reasons.

The substance of the affidavit of Albert Sowles is that about 190 shares of the stock were transferred to Edward A. Sowles, February 11, 1880, and $22,800 taken from the funds of the bank shown by a cash memorandum merely, and 100 shares about March 19th, and $12,350 taken from the funds of the bank, for which unaccepted drafts of Edward A. Sowles were given to pay for this stock; that these drafts were not entered on the books of the bank, but, with the cash memorandum, were carried to October 1, 1880, when new unaccepted drafts of Edward A. Sowles, to the amount of $37,600, were taken in place of them, and then entered on the books of the bank; that he has no knowledge now that defendant Burton was informed by any one that Edward A. Sowles procured the money from the bank to pay for the stock, or had any knowledge of the drafts; that, so far as he knows now, Burton had no knowledge that drafts and notes to replace these drafts were given for the money taken by Edward A. Sowles to pay for the stock; that he did not intend to testify in any manner differently from this before, but had not then examined into the details of the loan as he has since, and got a little mixed in his account of it. The word "now," by which he limits his present knowledge of Burton's information and knowledge of the loan and drafts, was carefully interlined twice, at the time of making oath to the affidavit, apparently; which indicates that his attention was called to it, and that he suggested or recognized its propriety.

The substance of the affidavit of D. Noyes Burton is that shortly after his father was elected director, February 11, 1880, he examined the assets of the bank with his father in view of the negotiation for 100 shares of stock with Edward A. Sowles, and found no indication that he had taken the money of the bank to pay for stock then understood to have been recently purchased by him.

The substance of the affidavit of Albert P. Cross is that he was employed to attend the taking of the testimony in behalf of Burton; that he expected the senior counsel to be present and assist; that but little was taken before December, 1886, and then he was informed that the senior counsel could not attend, and that he must attend to it without that assistance; that Burton stated to him his knowledge of this loan, as stated in his affidavit; that in view of the testimony taken by the orator he deemed the questions asked Burton, which elicited his testimony as to the drafts and notes and that testimony, as being all that was required to meet the case made by the orator on this item; and that it was understood between him and the orator that there were securities held by the orator applicable to this loan, and that there would be a reference to a master to ascertain the amount of the loss in case liability for it should

be decreed, and that evidence on that subject would not then be proper, and was omitted on that account.

That Burton's attention was called to the charge against him on account of this loan is fully apparent from these affidavits, as well as from his former testimony. Besides that, this loan was specifically set out in the bill as a ground of liability on his part on account of its unlawful character, with others, on the same ground. His answer to these allegations was that never, so far as he knew, and never with his consent, was the limitation as to the sum to be loaned to any person or corporation allowed to be violated by the bank or the directors of the bank. The effect of this part of the answer, as evidence of any fact, is fully met by other instances in which the limitation was violated by transactions in which he took part, and of which, by his own testimony, he had full knowledge. Of this class is the case where D. Noyes Burton had, according to his testimony, used $20,000 borrowed by Olliffe & Schmidt, D. Noyes Burton, and Edward A. Sowles, and became the borrower of that amount at this bank, on paper indorsed by him and Sowles to that amount, to make good what was so used. Also of this class was the loan in May, 1883, to the Glens Falls Shirt Company of over $16,000 on paper indorsed by himself and Edward A. Sowles. And Albert Sowles testifies to his consent to a loan to him of $10,000, when he was already indebted to a large amount. This latter is, however, disputed by Burton. He was not charged for losses on account of these loans, for they were either shown to have been paid, or not shown to have resulted in loss. His answer may have been morally true in this respect, for he may not have known that these things were a violation of any law. If so, the same may be true as to the loan to Edward A. Sowles in question. The fact that D. Noyes Burton found no trace of the loan among the assets of the bank would have no direct bearing upon the question whether his father assented to it or not, even if he made that examination after the loan was made. But his father testified that the negotiation for the 100 shares of stock was had in December, 1879, when he purchased 10 shares of Edward A. Sowles for the purpose of becoming eligible as director in contemplation of the election then approaching. An examination shortly after that would probably have been prior to the loan. Neither would the fact that he was not at St. Albans on the eleventh of February, 1880, and did not know of the transactions of that day as they were taking place, if shown by testimony of the outgoing director interviewed, have any immediate bearing upon the question of his assent. That he knew of a proposed purchase of the stock before that day is shown by his own testimony, given as of his own knowledge, that it was advised by the bank examiner.

Edward A. Sowles is named in the motion as a witness whose testimony is desired to be taken further. There is no affidavit, or anything, from him to show whether there is anything to which he can testify further than he has already testified or not. The orator is also named in the motion as a witness whose testimony is desired, but it is not understood that anything is expected from him but what appears from the

records of the bank in his hands, as stated from the affidavit of Albert Sowles. Albert P. Cross is also so named. It is shown, however, that he has no knowledge on this subject except what has been acquired since his employment as counsel.

There remain Albert Sowles, and the defendant Burton, whose further examination is desired. There is nothing set forth from them which can in any sense be considered as newly discovered, except that a bond was required and had by the outgoing directors to indemnify them against liability; and that $22,800 of the loan was taken from the bank before they retired; and that the loan was not shown on the books of the bank until October 1st after. The only apparent importance in the existence of such a bond is that the taking of it would show that those who took it had, or thought they had, incurred some liability against which they wanted indemnity. If assenting to this loan was that liability, it would have some tendency to show that they were the ones who assented to it. That fact, however, is already shown in the case, and has appeared ever since Albert Sowles testified, and appeared again in the testimony of Edward A. Sowles. That the money was taken before they retired would not show that this defendant did not assent to the loan before it was taken, and assent to it as a director. He claimed to be a director from his election by the stockholders at the beginning of the year, as appears by his testimony, and it is understood that he took the oath of office, and entered upon his duties as director, so far as he was permitted, from that time forward. That others claimed to be, and were recognized by still others, who undoubtedly were directors, as the directors, would not relieve him from what he did and claimed to do as a director that was prohibited by express law. The form of the loan and the manner of its entry on the books of the bank are wholly immaterial. There is no question but that Edward A. Sowles became indebted to the bank to the amount of about $36,000 as a borrower, and that is what the statute prohibited; and the assent to the violation of that prohibition is what creates the liability. Of course there is nothing in the defendant's own testimony which he desires to give that is newly discovered, although newly-discovered facts might make it material when it did not appear to be so before. There is, however, no such fact shown now, not known to him when he testified, as to make it newly material. Apparently, he now merely wishes to deny what he did not deny before, but which called for denial then as much as now. It is not understood from the affidavit of Albert Sowles that he intends to say that what he got a little mixed about included the assent of all the directors of both boards to this loan. He says he had not examined into the details when he testified before as he has now, and gives that as a reason for getting mixed. But when he testified about the assent, he did not go into the details at all, but testified to that as a distinct fact. He does not say that he testified then to anything which he did not recollect, nor that anything was taken down by the examiner as testified to by him that he did not testify to. What is desired to be asked of him now was proper matter of cross-examination then, or of examination in chief when the defendant took his testimony, if deemed desirable, and there has been

nothing to vary the desirability but the decision of the case.     So far as
appears there was nothing to prevent the attendance of the senior coun-
sel at the examination of Albert Sowles in April, 1886.     The testimony
of the defendants was not taken until January, 1887, and that of Albert
Sowles on this point lay on the surface of the case, in plain sight, dur-
ing all the intervening time, for consideration as to what should be done
in respect to having it explained, or attempting to contradict it.     And
the defendant's counsel was present to cross-examine Edward A. Sowles,
when he testified, if that was deemed advisable.     The defendant and his
counsel in charge did as they deemed best as to all of these things.·     In
view of what they knew about the facts of the case, their course may
have been the wisest one to take, and may not.     The real question is
whether what was done then should be allowed to ·be done over again,
because it is thought now that it can be done in a better manner.     That
it is within the power of the court to allow this to be done now, is be-
yond question.     But this is not a power to be exercised arbitrarily, or
otherwise than according to the usual modes of procedure in such cases,
as established and understood.     Any other course would tend to the
confusion of parties as to when and how their cases should be made up
and presented, and thereby make the administration of justice less·cer-
tain, and increase the chances of injustice.

In *Ruggles* v. *Eddy*, 11 Blatchf. 524, the defendant's counsel admitted
that their stoves infringed the plaintiff's patent, if it was valid.     The de-
fendants moved to open the case, after an interlocutory decree, and to
be permitted to contest the question of infringement, on the ground that
if their counsel had sufficiently studied the patent and examined their
stoves, the admission would not have been made.     Upon this Judge
WOODRUFF said:·

"I am constrained to hold the defendants concluded. Their case, as made by
themselves, rests either upon their own want of due diligence, or the want
of due intelligence on the part of their counsel.   By this the complainant
ought not to be so far prejudiced as, after decree, reference, and report of the
master, to be compelled to go again through the litigation, on a point dis-
tinctly presented and proper to be met at the outset.   Their case, as pre-·
sented by the counsel whom they have employed for the purposes of this mo-
tion, and who regards it as clear that, as to most of the stoves which they had
made, they had avoided· the operation of the patent, seems, at first view, one
of hardship; but, if that is so, the defendants have brought it upon themselves
by their own negligence, or by relying on a degree of vigilance, study, and ac-
curacy on the part of their several counsel which they now think was inad-
equate to their protection.   No case has been referred to which, in any degree,
tends to sanction the latitude of indulgence which the defendants here seek.
Cases are numerous tending in the other direction, of which *India Rubber
Co.* v. *Phelps*, 8 Blatchf. 85; *Hitchcock* v. *Tremaine*, 9 Blatchf. 550; *Prevost*
v. *Gratz*, Pet. C. C. 364; and *Livingston* v. *Hubbs*, 3 Johns. Ch. 124,—are
examples."

A similar decision was made by Judge JOHNSON, in *Webster Loom Co.*
v. *Higgins*, 13 Blatchf. 349.

. In *De Florez* v. *Raynolds*, 16 Blatchf. 397, the defendant's counsel,
after examination of a prior patent, omitted to put it in as evidence.
After an interlocutory degree the defendants moved, by other counsel,

to open the case to admit it in evidence, on the ground that their former counsel had misjudged as to the scope of the prior patent, and that they had relied upon his skill and fidelity as an attorney of the court, when in fact he was not at that time, although assuming to be, an attorney of the court at all. Judge BLATCHFORD denied the motion, after a very careful review of the case and grounds of the motion. In doing so he said:

"This is not a case of newly-discovered evidence. The *gravamen* of the application is the alleged laches, and inexperience and incompetence, of Mr. Whitney. If such grounds were to be admitted as reasons for opening cases, there would never be an end of a suit, so long as new counsel could be employed who could allege and show that prior counsel had not been sufficiently diligent, or experienced, or learned."

These cases abundantly show that no mistakes of judgment, or want of attention, of counsel, if there were any such, which is not intended to be affirmed or implied, affords any just or proper grounds for granting this motion and opening the case. The judgments and decrees of courts should rest upon such solid bases of fact as may be had by the usual modes of procedure, and the rules of evidence established by law and usage. At first sight, it might appear that the retaking of evidence, or the taking of new evidence, could justly wrong no one, for the making of more truth to appear would afford greater opportunity for just judgment. But affording chances for retaking testimony after judgment might not always, and probably would not often, tend to the elucidation of truth. Temptations would be furnished which it is the policy of the law to avoid.

The testimony of Albert Sowles, as taken and filed in this case, is apparently straightforward, candid, truthful, and fair. The defendant had, and availed himself of, full opportunity to cross-examine him upon it, and, after months to consider it in, a further opportunity to examine him, and to testify himself with reference to any facts that might be elicited. It does not satisfactorily appear now that truth and justice would be any more likely to be reached in this cause by affording another opportunity, which cannot be done without breaking over well-settled rules and established modes of procedure. These views are not intended to reflect upon the testimony of any of the witnesses taken and filed, nor upon the course taken by client or counsel in making and presenting this motion; but they lead inevitably to the conclusion that this motion must be denied.

It is admitted by the orator that there are securities held by him, from the avails of which there may be something to apply on this debt, and thereby lessen the loss in consequence of this loan; and that it was understood that, if the amount of the loss should be necessary to be ascertained, a reference to a master for that purpose would be necessary. The directions for a decree should be modified accordingly.

Motion to reopen case denied. And let a decree be entered that the defendants Albert Sowles and Burton are chargeable for the amount of the loss on the loan of $36,000 to Edward A. Sowles; that an account

be taken of the amount of that loss, and that they pay the amount when ascertained to the orator, with costs; and that the bill be dismissed as to the defendants Edward A. Sowles and Hall, without costs.