## COMOLITE CORPORATION v. DAVIDOWITZ et al.

District Court, S. D. New York.
July 27, 1939.

Reargument Denied Dec. 2, 1939.

Brown & Jones, of New York City (Donald L. Brown, of New York City, of counsel), for plaintiff.

Bobick & Warshawsky, of New York City (Abraham Buchman, of New York City, of counsel), for defendants.

Richard Eyre, of New York City, for defendants on motion for reargument.

COXE, District Judge.

This is a suit for alleged infringement of the Brown patent, No. 1,508,504, issued September 16, 1924, for a heel for boots and shoes, and the Gugger & Barentzen patent, No. 1,988,242, issued Jan. 15, 1935, for an artificial wood composition and method of making the same.

The patents are owned by the plaintiff, which is engaged in the business of manufacturing and selling composition shoe heels made principally from sawdust. The defendant Jersey Wood Heel Corporation is the manufacturer of the alleged infringing shoe heels. The defendants Davidowitz, Dorfman and Forman are copartners, who, under the name of Columbia Novelty Slipper Co., manufacture ladies slippers; they together own a one-half interest in Jersey Wood Heel Corporation, and use a substantial part of the product of that company. The defendant Davidowitz is also the president of Jersey Wood Heel Corporation, and the active directing head of its business.

The Brown patent No. 1,508,504 contains three claims; and all are in issue. Claim 1 reads as follows: "1. As an improved article of manufacture, a heel comprising a molded block composed of sawdust and a soluble binder, and saturated with nitrocellulose".

Claim 2 adds to Claim 1 "a finishing coating thereon". Claim 3 calls for a molded heel formed of sawdust and a soluble binder, and an "impregnating hardening and solidifying agent". The defenses are invalidity for lack of invention, and invalidity due to insufficient disclosure. There is no contention that if the patent is valid the defendants do not infringe.

The only claim of the Gugger and Barentzen patent No. 1,988,242 in issue is Claim 1, reading as follows: "1. An artificial wood composition comprising by weight approximately 42% sawdust, 14% glue, and approximately 40% water, with small portions of alum, borax, a sulphide, an oil, phenol, and chromic acid."

The defenses to this patent are invalidity and non-infringement.

The plaintiff was organized in 1933, and is a pioneer in the manufacture and sale of composition shoe heels made out of sawdust and a binder. The product has enjoyed a considerable amount of commercial success, the sales amounting to about 400,000 dozen pair of such shoe heels a year. The company has a substantial investment in machinery, and employs about 160 persons.

First, as to the Brown patent. The patentee states that the invention "relates to heels of the composition or wood type", and that the object is "to provide an economically manufactured heel which shall be light, strong and tough and impervious to water, and which, with a top lift therefor, is adapted to receive and hold a surface coating which shall be hard and wear resisting and impart the desired color and finish". It is also stated that the "preferred heel block is formed by mixing hardwood sawdust with glue size or like pasty cement or (sic) sufficient tenacity to permit the plastic mass to be shaped in a suitable mold under pressure and to maintain its shape without checks or pits when removed therefrom." When the block thus formed is dry, "it is soaked in nitrocellulose in solution which penetrates the pores and interstices and when the solvent of the nitrocellulose has evaporated the block is found to be strong and tough", "and practically homogeneous throughout and waterproof".

The prior art references contain many examples of plastic wood made by mixing sawdust and glue with various solidifying agents, but only two of the references relate to composition shoe heels. Ethridge, No. 364,755 (1887) shows a method for attaching heels to boots or shoes. He discloses the use of a shell into which "a semi-fluid, plastic, or viscous substance" is introduced in such a way that when it hardens it grips the heads of the nails holding the heel to the shoe. Ethridge suggests the use of "a mixture of glue and sawdust" for his plastic composition, but, other than that, the patent has no relevance to Brown. Ayres, No. 1,-270,586 (1918) shows the use of leather scrap and a small amount of wood pulp mixed with rosin or other suitable binding agent to form a molded shoe heel. There is, however, no mention of sawdust, or of a protective coating, or of a hardening or solidifying agent, such as disclosed by Brown. I am satisfied, therefore, that none of the prior patents anticipates the patent in suit.

It is conceded by the plaintiff that sawdust, glue, glue hardening agents and nitrocellulose were each separately old. It may be admitted also that combinations of these different materials have been used in the production of various articles. The fact remains, however, that Brown was the

first to put the materials together in a new combination to produce a new result. I think that this constituted invention.

The contention of the defendants that the Brown patent is invalid because of an insufficient disclosure requires little comment. The claims themselves are specific. In that respect, they are quite different from the claims condemned in General Electric Co. v. Wabash Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402, which were not only loosely framed, but functional. The present claims adequately describe the ingredients to be used in the manufacture of the product, and in that way mark the bounds of the invention.

■ Second, as to the Gugger and Barentzen patent. The invention of this patent is stated to relate to "a novel and improved composition which may be cheaply and efficiently made and which shall have substantially all of the desired properties of natural wood". Claim 1, which is the only claim in issue, calls for a composition "comprising by weight approximately 42% sawdust, 14% glue, and approximately 40% water, with small portions of alum, borax, a sulphide, an oil, phenol, and chromic acid". The testimony at the trial was that the small portions of alum, borax, a sulphide, an oil, phenol, and chromic acid, mentioned in the claim, were of relative unimportance in the manufacture of composition shoe heels; certainly the addition of these ingredients did not amount to invention. I think, also, that varying the quantities of the other materials was merely a matter of choice, and required only ordinary skill. I hold, therefore, that Claim 1 of the Gugger and Barentzen patent is invalid for lack of invention.

There may be a decree holding Claims 1, 2 and 3 of the Brown patent No. 1,508,504 valid and infringed; holding Claim 1 of the Gugger and Barentzen patent No. 1,-988,242 invalid for lack of invention; all without costs to any of the parties.

### On Motion for Reargument.

This is a motion by the defendants for reargument. When the case was tried, it was stated by counsel that validity alone was questioned insofar as the Brown patent was concerned; there was no contention by the defendants that if the patent was valid it was not infringed. It was for that reason that I did not consider infringement in the opinion of July 27, 1939. After the opinion was filed, the defendants obtained new counsel, who immediately asked for a reargument on the question of infringement. The decree holding the three claims of the patent valid and infringed had in the meantime been entered, and the new counsel for the defendants thereafter made the present motion for reargument.

The plaintiff urges at the outset that such a complete reversal of position on the part of the defendants should not be allowed at this time. It asserts that it was prepared to introduce further evidence at the trial on the question of infringement if that issue had been contested by the defendants. It insists, also, that the showing made by the defendants is insufficient to justify a rehearing. See Colgate v. Western Union Tel. Co., C. C., 19 F. 828; Pittsburgh Reduction Co. v. Cowles Co., C. C., 64 F. 125; Lowell Mfg. Co. v. Hogg, C. C., 70 F. 787. I think there is considerable force in this contention of the plaintiff, but I prefer not to take that ground.

The Brown patent is fully described in the prior opinion, and little need be added to what was there said regarding it. According to the specification, the preferred heel block is formed from a mixture of "hardwood sawdust with glue size or like pasty cement". When the block thus formed is dry, it is "soaked in nitrocellulose in solution which penetrates the pores and interstices and when the solvent of the nitrocellulose has evaporated the block is found to be strong and tough, * * * and practically homogeneous throughout and waterproof". The block is then sandpapered and given a coating "by dipping in nitrocellulose and drying"; afterwards other coatings of nitrocellulose may be added "to insure a smooth exterior finish, one of which may be the color coat."

The defendants concede that their heels are made of sawdust and glue; to these they add formaldehyde, cresylic acid and terra alba. All of the ingredients are mixed in a water solution, and the mass is dried and molded. I think that this responds to the language of the claims, which calls for a molded block composed of "sawdust and a soluble binder". After the blocks are molded, they are sanded. The succeeding steps in the manufacture of the defendants' heels are described in the stipulation of facts as follows: "They (i. e., the molded blocks) are then dipped into a lacquer known as a 'prime coating' and immersed therein for a few seconds. This lacquer comprises film scrap, a solvent therefor, and a dispersion therein of a fine clay as a filler. The film

scrap contains nitrocellulose, and not other cellulosic material. After the heels are dipped in this lacquer they are buffed or polished and then sprayed with a clear lacquer to which a pigment or other coloring agent is usually added".

The testimony for the defendants was that the film scrap in the lacquer was nitrocellulose, and that the lacquer consisted merely of nitrocellulose, a solvent and a filler. It is thus established that the defendants' heels, after molding and sanding, are "dipped" in nitrocellulose and "immersed therein for a few seconds". Is this sufficient to bring the defendants' heels within the language of Claims 1 and 2 requiring that the molded block be "saturated with nitrocellulose"? I think it is. The defendants' molded block, when placed in the solution of nitrocellulose, is porous, and I am satisfied that the nitrocellulose penetrates the pores and interstices so as to make the heel "practically homogeneous throughout and waterproof". That clearly is the purpose of using nitrocellulose, and I do not think that infringement is avoided, if, in the process of immersion, every part of the molded block is not reached by the nitrocellulose. I hold, therefore, that Claims 1 and 2 have been infringed.

With this disposition, it is unnecessary to consider Claim 3, which, I am satisfied, is no broader than Claims 1 and 2.

The motion of the defendants for reargument is denied.